**Opinion issued August 16, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00039-CR

_____

**DURWIN YOUNG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1516207**

## O P I N I O N

The question before us is whether, on this record, a police officer violated Durwin Young's constitutional rights by removing a pill bottle from Young's pant pocket, when Young was neither under arrest nor the subject of a search warrant. The State contends that the officer's actions pose no Fourth Amendment problem

because it was immediately apparent to the officer based on "plain feel" that the pill bottle was contraband. We disagree and reverse.

## Background

Young moved to suppress evidence obtained from a pill bottle because, according to Young, Officer D. Duval unlawfully seized the bottle, removing it from Young's pant pocket without probable cause. The court heard arguments on that motion.

At the hearing, Officer Duval testified that on the evening of July 6, 2016, he and his partner were patrolling an area known for crime and narcotics activity. The officers pulled over a car because it did not make a complete stop at a stop sign. Young was the passenger in the car.

The car's two occupants, Young and the driver, exited the car. Officer Duval and his partner instructed them to get back in the car, and they complied. Officer Duval noticed Young make furtive movements toward the car's center console. No evidence suggests that drugs or drug paraphernalia were visible in the car.

Officer Duval asked to see Young's driver's license, but Young (the car's passenger) did not have it. Officer Duval then asked Young to get out of the car, which he did. According to Officer Duval, Young appeared nervous.

Officer Duval patted down Young to make sure he did not "feel the bulge of a gun, bulge of a knife . . . anything like that." Officer Duval felt a bulge in Young's

2

left pocket that, he testified, he initially thought may have been a weapon. Officer Duval "grabbed it, shook it real quick, and it felt exactly like a pill bottle"—not a weapon.[1] Officer Duval asked Young what the object was. Young did not answer.

Officer Duval testified that based on his experience, a pill bottle "absolutely" may contain narcotics. Officer Duval also stated that he "believe[d] that it was narcotics within that bottle" in light of "the circumstances, the high-crime area, the time of night, [and] the defendant's actions."

Officer Duval removed the bottle from Young's pocket. Officer Duval then saw an "orange prescription pill bottle" with an "extremely worn" label that did not identify a patient's name. Officer Duval's experience taught him that the bottle's condition was "consistent with someone hiding narcotics." Officer Duval opened the bottle and found ten grams of ecstasy (methamphetamine).

At the close of the hearing, the trial court denied Young's motion to suppress without making written findings of fact and conclusions of law.[2]

---

[1] Officer Duval further testified:

Q. Okay. So, now what resulted from you shaking the bottle? What did you learn from shaking the bottle? . . .

A. —I mean, obviously it didn't feel like a gun, but by that point I made that determination. It felt like a bottle, a faint rattle, exactly like a pill bottle.

[2] In conducting our review, we also consider the trial testimony. *See Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). The trial evidence on this issue was largely duplicative of that presented at the suppression hearing. A consideration of the trial testimony does not change our analysis.

3

The jury found Young guilty of possession of methamphetamine. Young pleaded true to two enhancement paragraphs and the trial court sentenced him to 45 years in prison. Young appealed.

## Discussion

Young contends that the trial court erred by denying his motion to suppress. Young does not challenge the traffic stop or the reasonableness of Officer Duval's frisk for weapons. The only question is whether Officer Duval was constitutionally permitted to remove the pill bottle from Young's pant pocket. On this record, he was not.

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Blake v. State*, 125 S.W.3d 717, 722 (Tex. App.—Houston [1st Dist.] 2003, no pet.). We review questions of law de novo. *Carmouche*, 10 S.W.3d at 327. But we give almost total deference to the trial court's determination of facts that depend on credibility. *Id.* And where, as here, the trial court made no written findings of fact (and findings were not requested below), we "presume that the trial court found facts consistent with its ruling as long as the implied findings are supported by the record." *Nelson v. State*, 463 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

4

**B.     Legal Principles**

The United States and Texas Constitutions both prohibit unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. In its plain terms, the Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *accord* TEX. CONST. art. I, § 9.[3] "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, 5, 133 S. Ct. 1409, 1414 (2013) (citation and internal quotation marks omitted).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (citation omitted). For one, an officer with reasonable suspicion that an individual is involved in criminal activity may conduct a brief investigative detention without first obtaining a warrant.

---

[3]     Young's argument focuses on the Fourth Amendment to the United States Constitution. Because he does not separately brief an argument under the Texas Constitution, we focus our analysis on the United States Constitution's Fourth Amendment. *See* TEX. R. APP. P. 38.1(i); *Heitman v. State*, 815 S.W. 2d 681, 690–91 n.23 (Tex. Crim. App. 1991); *Giles v. State*, No. 01-08-00410-CR, 2010 WL 2133893, at *6 (Tex. App.—Houston [1st Dist.] May 27, 2010, pet ref'd) (mem. op., not designated for publication).

5

*Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 329. An accompanying pat-down is justified if the officer reasonably concludes that the suspect might possess a weapon. *Carmouche*, 10 S.W.3d at 329; *see Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *see also Strickland v. State*, 923 S.W.2d 617, 620 (Tex. App.—Houston [1st Dist.]1995, no pet.) ("A pat-down search during a detention is permissible when the police officer *reasonably suspects* he is dealing with an armed and dangerous individual.").

The parties here dispute whether the officer (while conducting a *Terry* frisk that Young does not challenge) was permitted to remove a pill bottle from Young's pant pocket and then open it. This implicates the plain feel doctrine.

The plain feel doctrine holds that, if an officer conducting a lawful pat-down search for weapons feels a non-weapon object "whose contour or mass makes its identity immediately apparent" as contraband, the officer may seize that object without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S. Ct. 2130, 2137 (1993). This is because if an officer is legitimately conducting a *Terry* frisk, no additional Fourth Amendment interest "is implicated by the seizure of an item whose identity is already plainly known through the officer's sense of touch." *Carmouche*, 10 S.W.3d at 330 (citing *Dickerson*, 508 U.S. at 377, 113 S. Ct. at 2138). If contraband is left in open view or feel and is observed by a police officer from a lawful vantage point, there has been "no 'search' within the meaning of the

6

Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Dickerson*, 508 U.S. at 375, 113 S. Ct. at 2137; *see also Kentucky v. King*, 563 U.S. 452, 453, 131 S. Ct. 1849, 1852 (2011) ("[O]fficers may seize evidence in plain view if they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made.").

The incriminating character of the object must be immediately apparent. *See Dickerson*, 508 U.S. at 375–76, 113 S. Ct. at 2137. This means that, once the officer has ruled out the presence of a weapon, he cannot conduct an additional search or investigation to determine that the object is contraband. *See id.* (search was unconstitutional when officer, after concluding that object was not a weapon, manipulated object before determining that it was contraband); *State v. Dobbs*, 323 S.W.3d 184, 189 (Tex. Crim. App. 2010) (immediately apparent means "without the necessity of any further search").

The "immediately apparent" requirement does not require actual knowledge of the contraband. *Williams v. State*, 668 S.W.2d 692, 700 n.12 (Tex. Crim. App. 1983) (quoting *Texas v. Brown*, 460 U.S. 730, 741, 103 S. Ct. 1535, 1543 (1983) (plurality op.)); *see also Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991) ("[P]lain view analysis does not require actual knowledge of incriminating evidence."). But it requires "that the viewing officers . . . have probable cause to

believe an item in plain view [or feel] is contraband before seizing it." *Dobbs*, 323 S.W.3d at 189.

Probable cause exists where the facts and circumstances known to law enforcement officers are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Marcopoulos v. State*, 538 S.W.3d 596, 602 (Tex. Crim. App. 2017) (citation omitted). To determine whether an officer has probable cause, we consider the totality of the circumstances. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). Probable cause is viewed objectively. *See id.* at 27. "An officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.— Houston [1st Dist.] 1994, pet. ref'd) (citing *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545); *Wiede*, 214 S.W.3d at 25 ("[T]he training, knowledge, and experience of law enforcement officials is taken into consideration.").

## C.   Analysis

The plain feel doctrine did not justify the officer's removal of the pill bottle. And without the plain feel doctrine or other probable cause, the removal of the bottle from Young's pant pocket—on his person—contravened the Fourth Amendment. *Carmouche*, 10 S.W.3d at 330 ("[I]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and

8

its fruits will be suppressed.") (quoting *Dickerson*, 508 U.S. at 373, 113 S. Ct. at 2136).

As explained above, the plain feel doctrine permits an officer who is legitimately conducting a *Terry* frisk to seize an item "whose identity is already plainly known through the officer's sense of touch." *Carmouche*, 10 S.W.3d at 330 (citing *Dickerson*, 508 U.S. at 377, 113 S. Ct. at 2138). Central to the plain feel doctrine's application is that, through touch, the officer "plainly know[s]" (i.e. has probable cause that) the object is contraband.

Deferring to the trial court's implied findings of fact, as we must, we conclude the officer knew immediately based upon feel that the object in Young's pant pocket was a pill bottle. Yet that does not end the inquiry. The officer must also have a reasonable belief that the pill bottle was (or contained) contraband.

But an officer could not have had a reasonable belief based on feel alone (i.e. touch through a pant pocket, with no visual image) that a *pill bottle*—an inflexible container that by its nature prevents one from feeling its contents—was contraband. *See, e.g.¸ Sullivan v. State*, 626 S.W.2d 58, 60 (Tex. Crim. App. [Panel Op.] 1981) ("[T]his Court has held that the viewing of an unopened, translucent pill bottle cannot, without more, justify a subsequent seizure."); *Howard v. State*, 599 S.W.2d 597, 602 (Tex. Crim. App. 1979) (in plain view case, it was not immediately

apparent that pill bottle contained contraband). A pill bottle, of course, has plenty of legitimate uses.

As the Court of Criminal Appeals has instructed, we credit the officer's training and experience. *See, e.g.*, *Wiede*, 214 S.W.3d at 26–27. An officer's training and experience may well teach him that a particular person uses a certain type of container to carry narcotics. *See Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006) ("The record supports a finding that [the officer] immediately recognized the tubes in appellant's pocket as contraband based on his knowledge that appellant used these types of containers to carry illegal narcotics."). Training and experience could potentially teach an officer that a plastic bag with white powder may not have much use (outside of a kitchen) besides carrying narcotics. *See, e.g.*, *Miller v. State*, 667 S.W.2d 773, 777 (Tex. Crim. App. 1984) (officer had "probable cause to believe that the plastic baggie in appellant's pocket contained illicit substance"; sticking out of appellant's pocket was a bag containing white powder that officer suspected was some type of narcotic); *see also Wiede*, 214 S.W.3d at 26–27. And an officer's training and experience might help him identify, based on plain feel, certain objects like a crack pipe or a cocaine rock. *See, e.g.*, *Strickland*, 923 S.W.2d at 621–22 (It became immediately apparent that suspect had crack pipe when, in one motion, officer felt "small, hard, tubular object, heard it clank against the lighter, felt both

10

ends of the tube with his fingertips and immediately recognized the object to be a crack pipe.").

But we cannot conclude that an officer's training and experience would supply a reasonable belief, based solely on touch, that a pill bottle—a common and typically benign object—is contraband. *See Gonzales v. State*, 666 S.W.2d 496, 499 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) ("We do not believe that even an experienced officer can look at an orange substance inside a plastic bottle and make an immediate rational determination that the substance therein is methadone."); *State v. Davis*, 988 S.W.2d 466, 467 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("If the pipe could have been a tobacco pipe, the 'plain feel' doctrine would not have applied, because unlawful possession of the pipe would not have been immediately apparent."); *see also Ex parte Warren*, 783 So. 2d 86, 94 (Ala. 2000) ("After considering both lines of cases that have reviewed the difficult issue presented in this case, we conclude that the better-reasoned view is that espoused by those courts holding that if the object detected by the officer's touch during a *Terry* search is a hard-shell, closed container, then the incriminating nature of any contents of that container cannot be immediately apparent to the officer until he seizes it and opens it.") (emphasis omitted); *Commonwealth v. Guillespie*, 745 A.2d 654, 657–59 (Pa. Super. 2000) (seizure of pill bottle from defendant's pocket was unlawful because bottle was not in a suspicious location on defendant's person and did not reveal an

11

incriminating consistency through officer's tactile sense); *State v. Abrams*, 471 S.E.2d 716, 717–18 (S.C. App. 1996) (evidence obtained by seizure of Tylenol bottle suppressed because incriminating character of the object was not immediately apparent during pat-down).

We turn—as the Court of Criminal Appeals has instructed us—to the totality of the circumstances and ask whether all of the circumstances (including the pill bottle), taken together, created probable cause that the pill bottle contained contraband. *See Wiede*, 214 S.W.3d at 27. They did not. The circumstances would not have justified a reasonable belief that what the officer felt was contraband.

Young was a passenger in a car. He was not suspected of any crime, and he committed no alleged infraction. No evidence suggests that drugs or drug paraphernalia were visible in the car. *Cf. Lipscomb v. State*, 526 S.W.3d 646, 656–57 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (contraband was immediately apparent to police officer when officer found a plastic bag of pills inside an open "hide-a-can," officer knew that hide-a-cans used "false lid[s]" to "hide stuff" like "dope," there was a scale on kitchen counter next to contraband, and apartment had trappings of "narcotics house"). Yes it was around 10:00 p.m. in a high crime area. And yes the officer testified that Young appeared nervous, exited the vehicle (then promptly followed instructions to reenter and exit), and made furtive gestures toward the center console—notably, not toward his pocket containing the pill bottle.

12

But "there remains . . . a discernible gap" between any suspicion created by the area and time, on the one hand, and the proof necessary to establish probable cause, on the other. *See Marcopoulos*, 538 S.W.3d at 602 ("There remains, then, a discernible gap between the reasonable suspicion aroused by Marcopoulos's brief presence at [a known narcotics establishment] and the proof necessary to establish probable cause."); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) ("The Court usually requires 'some quantum of individualized suspicion' before a search or seizure may take place.") (quotation omitted). And Young's actions do not bridge the gap. *See Marcopoulos*, 538 S.W.3d at 601–03. To support probable cause, "furtive gestures must be supported by evidence that directly, not just 'vague[ly],' connects the suspect to criminal activity." *Id.* (citations omitted). Young's gestures to the center console "were not connected to a known or suspected instrumentality of crime," and the totality of the circumstances did not supply probable cause that the pill bottle contained contraband. *See id.* (officers lacked probable cause that contraband was present in vehicle; although defendant briefly appeared at known narcotics establishment and made furtive movements, officers did not know what happened inside the establishment, and defendant's furtive movements were not connected to known or suspected instrumentality of crime).

An officer conducting a valid investigative detention must have probable cause to conduct a search for non-weapon contraband or other evidence. *Baldwin v.*

13

*State*, 278 S.W.3d 367, 371–72 (Tex. Crim. App. 2009). Without probable cause, "the officer's conduct of reaching into appellant's pocket—even under a valid investigative detention—was an illegal search unless there existed some exception to the usual probable cause requirement." *Id.* at 372. There was no valid exception here. The officer's removal of the pill bottle was unconstitutional, and the trial court erred in denying Young's motion to suppress. *See Carmouche*, 10 S.W.3d at 330–31.

Other than the improperly admitted contents of the pill bottle, the record contains no evidence of possession of methamphetamine. Thus, we cannot say beyond a reasonable doubt that the trial court's error in denying the motion to suppress did not contribute to Young's conviction. *See* TEX. R. APP. P. 44.2(a).

## Conclusion

We reverse the trial court's judgment, and we remand the case to the trial court for further proceedings.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

Publish. TEX. R. APP. P. 47.2(b).